IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

THOMAS ALSTON )
10012 Cedarhollow Lane )
Largo, Maryland 20774 )
)
    *Individually and on Behalf of a* )
    *Class of Persons Similarly Situated* )   Case No. CAL17-18362
)
    Plaintiff, )
)
v. )
)
ABC FINANCIAL SERVICES, INC. )
Serve: Jordan M. Spivok )
       4550 Montgomery Ave )
       Suite 1125 )
       Bethesda, Maryland 20814 )
)
    Defendant, )
)
LMD GYMS, LLC )
Serve: Adam S. Zarren, Esq. Saul Ewing LLP )
       500 E. Pratt Street, Suite 900 )
       Baltimore, Maryland 21202 )
)
    Defendant, )
)
GBG, INC. )
Serve: CSC-Lawyers Incorp. Srvc. Co. )
       7 Saint Paul Street, Suite 820 )
       Baltimore, Maryland 21202 )
)
    Defendant, )
)
GOLD'S GYM INTERNATIONAL, INC. )
Serve: Corporation Service Company )
       800 Brazos Street, Suite 750 )
       Austin, Texas 78701 )
)
    Defendant. )

## CLASS ACTION COMPLAINT AND JURY DEMAND

The Plaintiff, Thomas Alston, on behalf of himself and all similarly situated individuals, states the following claims for relief against defendants ABC Financial Services, Inc. ("ABC"), and LMD Gyms, LLC, GBG, Inc. and Gold's Gym International, Inc. (collectively, the "Gyms")

1

## PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Ac, 15 U.S.C. §1692 *et seq.* ("FDCPA"), Maryland Consumer Debt Collection Act, Md. Code Ann., Com Law §14-201 *et seq.* ("MCDCA") and Maryland Consumer Protection Act, Md. Code Ann., Com Law §13-101 *et seq.* ("MCPA").

## PARTIES

2. The plaintiff is a natural person and resides in Upper Marlboro, Maryland.

3. ABC provides health club software and billing services to the fitness industry primarily in the United States.

4. Gyms operate a chain of fitness gyms in the United States.

### General Allegations Relating to Mr. Alston

5. In April 2017, the Plaintiff signed and entered into a membership agreement with the Gyms.

6. The terms and conditions of the membership agreement were documented and memorialized in a several paged contractual document that contained the following payment and/or monetary terms:

    a. Enrollment Fee of $29.00;
    b. Monthly Installment Fee of $9.99;
    c. Late Fees of $8.00; and
    d. Annual Rate Guarantee of $39.00

7. There was no term and condition stipulating that the Plaintiff would pay a $10.50 service charge or additional late fee.

8. On March 6th 2017, ABC emailed Plaintiff a notice stating his billing information needed to be updated.

2

9. In its email, ABC identified itself as the billing company for Gold's Gym Largo Cap Center membership. But ABC did not identify the creditor of the debt nor did ABC disclose the amount of the debt.

10. ABC did not provide a follow-up communication within five (5) days of its March 6th 2017 email.

11. On March 13th 2017, which was even (7) days after ABC's initial email communication on March 6th 2017, ABC asserted the total amount due on the debt was $28.49, which comprised a $8.00 late fee, $10.50 service charge, and $9.99 monthly payment.

12. ABC's assessment of the $10.50 was illegal for the membership agreement did not authorize an additional fee, especially larger fee than the $8.00 late fee.

13. The $10.50 service charge was not a reasonable measure of compensation for providing the Plaintiff with notice that he needed to update his billing information. Upon information and belief, an ABC employee—being paid less than $10 an hour—spent no more than 3 minutes on Plaintiff's account. Any fee of over $1.00 is an overcharge for value or expense or services expended.

14. Upon information and belief, Gyms does not disclose the service charge because it knows the service charge would be a penalty rather than valid liquidated damages amount and that a significant percentage of potential customers would question the charge and/or decide not to sign the membership agreement.

15. The $10.50 service charge was especially egregious being that it was not only more than the disclosed $8.00 late fee, but also more than the regular monthly payment of $9.99.

16. Plaintiff never agreed to pay a $10.50 service charge or a $18.50 total late fee and ABC's assessment of this fee was unauthorized.

17. On April 1st 2017, ABC emailed another notice stating a total of $28.49 was due on the account, including a 8.00 late charge, $10.50 service charge and $9.99 regular payment.

18. By email dated April 21st 2017, ABC asserted that a total of $46.48 was due on the debt with the amount due consisting of a $16.00 late charge, $10.50 service charge, a payment of $9.99 for March 2017 and $9.99 for April 2017.

19. Plaintiff found it agonizing to be charged with unauthorized and illegal fees. He called the defendant to complaint and requested the fees be waived or removed but ABC refused to remove the charges, including the illegal service charge.

20. Plaintiff paid the claimed amounts due, including the illegal $10.50 service charge, to avoid any additional assessments of illegal charges or fees and to prevent any negative credit reporting.

### Policies and Practices of OneMain

21. Gyms regularly presents potential customers with membership agreements that do not disclose there will be a $10.50 service charge to notify customers that their billing information needs to be updated or changed.

22. ABC regularly makes contact with consumers by email, regularly fails to identify the creditor and amount of the debt in its initial contact and regularly demands Gyms' customers pay a $10.50 service charge.

23. At all times, relevant to the matters alleged in this Complaint, Gyms' policy and practice regarding presenting membership agreements to potential customers were similar for all its potential customers.

24. At all times relevant to the matters alleged in this Complaint, ABC's policy and practice regarding communications to Gyms' customers were similar for all of Gyms' customers that were behind and/or needed to update their billing information.

### Class Allegations

25. Mr. Alston brings this action individually and on behalf of all persons similarly situated pursuant to Md. Rule 2-231.

26. Mr. Alston seeks to represent the following defined classes:

**Gym Class**

All persons (a) who are Gym customers that signed a membership agreement, (b) that was presented to the customers without any written disclose of a $beginning two years prior to the filing of this action, and 10.50 service charge, and (c) who were charged a $10.50 service charge for being notified that their billing information needed to be updated or changed.

**ABC Class 1**

All persons (a) that are members of the Gym Class (b) received an email from ABC that demanded they pay a $10.50 service charge.

**ABC Class 2**

All persons (a) that are Gym customers (b) who received an initial email from ABC (c) that did not identify the creditor, (d) did not disclose the amount of the debt and (e) did not receive another email from ABC until after five days from receiving the first email.

27. The class is so numerous that it is impracticable to join all members of the class to this action. The names and addresses of class members are identifiable through documents maintained by the Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

28. There are common questions of law and fact relating to the proposed classes, which include the following:

<u>Commonalities Of The Gyms Class</u>

a) Whether Gyms failed to disclose in its membership agreements the amount of its service charge that it charges to notify a customer that s/he needs to update his or her billing information;

b) Whether Gyms' service charge amount of $10.50 is a reasonable expense for notifying a customer that s/he needs to update his or her billing information;

c)  Whether Gyms' customers agreed to pay the $10.50 service charge by signing the membership agreement that did not disclose the amount of the service charge;

d)  Whether Gyms' service charge constitutes liquidated damages or a penalty; and

e)  Whether Gyms' customers reasonably relied on any of Gyms' representations in the membership agreement regarding the service charge.

### Commonalities Of The ABC Classes

a)  Whether ABC is a debt collector;

b)  Whether ABC's initial email communication was an attempt to collect a debt;

c)  Whether ABC's initial email communication identified the creditor of the debt;

d)  Whether ABC's initial email communication disclosed the amount of the debt;

e)  Whether ABC's subsequent email was within five days of its initial email; and

f)  Whether ABC sent an email demanding payment for a $10.50 service charge.

29. Mr. Alston's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same causes of actions.

30. The interests of the members of the Class will be fairly and adequately protected by Plaintiff. Mr. Alston is an adequate representative of the class because his interests coincide with interests of the members of the class he seeks to represent; he will retain counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Neither Plaintiff has nor will his counsel have any interests which might cause them not to vigorously pursue this claim.

31. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by the Defendants' conduct. It would be virtually impossible for the members of the

Classes to individually effectively redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation; it would be an unnecessary burden on the Courts.

### COUNT ONE: VIOLATIONS OF FDCPA

32.   Plaintiff incorporates the preceding allegations by reference.

33.   Defendant ABC violated 15 U.S.C. §1692e(2),f(1) by falsely representing the amount of the service charge and/or collecting a charge that was not expressly authorized by the membership agreement.

34.   Defendant ABC violated 15 U.S.C. §1692g(a)(1)-(2) by failing to notify Plaintiff of the amount of the debt and the name of the creditor within five days of Defendant's first communication with the Plaintiff.

35.   Defendant ABC's violations caused the Plaintiff to endure damages, including but not limited to: loss of money or pecuniary costs paying unnecessary or inflated charges, frustration and anger of being hoodwinked into paying excess and/or unauthorized charges, irritated and annoyed that Defendant thought it could get away with such a flagrant violation, extremely disturbed and stressed out at the thought that Defendants could possible being overcharging tens of thousands of residents locally and millions nationally, internalization of the stress lead to headaches and stomach aches, sleepless nights, eating disorders, etc.

36.   Defendant ABC's conduct was the proximate cause of Plaintiff's injuries, rendering it liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

### COUNT TWO: VIOLATIONS OF MCDCA

37.   Plaintiff incorporates the preceding allegations by reference.

38. Defendants ABC and Gyms knew the membership agreement did not authorize the $10.50 service charge and further knew that if such a service charge was disclosed in the agreement it would not qualify as a liquidated damages clause but as an illegal penalty.

39. Defendants violated Md. Code Ann., Com Law §14-202(8) by collecting and/or claiming a right to collect an unauthorized charge or inflated amount for the charge. Defendants knew they had no right to collect $10.50 for the charge because it was not agreed to in the contract. Defendants further knew the amount was excessive and illegal.

40. While it was Defendant ABC that sent Plaintiff the emails demanding the illegal charge, ABC is the agent and billing company for Gyms and ABC was collecting on Gyms behalf. Under the doctrine of respondeat superior, Gyms is responsible for the acts of its agent, ABC, and therefore ABC's violations are also Gyms violations.

41. Defendants' violations caused the Plaintiff to endure damages, including but not limited to: loss of money or pecuniary costs paying unnecessary or inflated charges, frustration and anger of being hoodwinked into paying excess and/or unauthorized charges, irritated and annoyed that Defendant thought it could get away with such a flagrant violation, extremely disturbed and stressed out at the thought that Defendants could possible being overcharging tens of thousands of residents locally and millions nationally, internalization of the stress lead to headaches and stomach aches, sleepless nights, eating disorders, etc.

42. Defendants foregoing violations render the Defendants liable for actual damages in an amount to be determined by the Court pursuant to MCDCA, §14-203.

### COUNT THREE: VIOLATIONS OF MCPA

43. Plaintiff incorporates the preceding allegations by reference.

44. Defendants violated the Md. Code Ann., Com Law §13-301(13)(iii) when the defendants violated the MCDCA at §14-202(8).

45. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.

46. In April 2015, Defendant Gyms omitted or failed to disclose to Plaintiff that a $10.50 service charge would assessed for notifying Plaintiff that his billing information needed to be updated or changed.

47. At the time of signing the agreement, the Plaintiff had no reason to believe that Gym would charge or assess additional fees or would not disclose charges.

48. Had the fee been disclosed then Plaintiff would not have entered into the membership agreement or he would have provided updated billing information before the charge would have been triggered.

49. Gyms violated §§13-301(1), 13-301(3) and 13-303(4) by engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the MCPA.

50. The Defendants conduct had the capacity, tendency or effect of deceiving Plaintiff, who in fact was deceived or misled, causing injury and loss through:

   a. excessive and/or unauthorized service charge in the amount of $10.50; and

   b. other actual damages, including emotional and mental distress as described in paragraph 41.

## JURY DEMAND

51. Plaintiff demands a trial by jury on behalf of himself and the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a) Certification of the proposed Class;
(b) Statutory, actual and punitive damages;
(c) Approval of a $15,000 to $25,000 incentive award for Plaintiff;

9

(e) Award costs and reasonable attorney's fees and costs; and
(f) Any such other relief the Court deems just, equitable and proper.

Date: July 24, 2017

                                      Respectfully submitted,

                                      **THOMAS ALSTON**

                                      */s/ Thomas Alston*
                                      Thomas Alston
                                      10012 Cedarhollow Ln
                                      Largo, MD 20774
                                      (240) 432-0927
                                      *Pro Se Plaintiff*